**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION**

| | |
|---|---|
| **BOBBI HARDISKY, individually and on behalf of all others similarly situated,** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| **v.** | : Case No. 2:20-cv-01483-MPK |
| | : |
| **GATEWAY HEALTH, LLC, formerly known as GATEWAY HEALTH PLAN, LP,** | : |
| | : |
| **Defendant.** | : |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT
UNDER THE FAIR LABOR STANDARDS ACT AND DISMISSAL OF ACTION**

I.    **Introduction**

Named Plaintiff Bobbi Hardisky, on behalf of herself and the other five individuals who filed written consents to join this Civil Action as opt-in plaintiffs pursuant to 29 U.S.C. § 216(b) (the "Settling Plaintiffs") of the Fair Labor Standards Act ("FLSA"), and Gateway Health LLC, formerly known as Gateway Health Plan, LP ("Gateway"), have reached a settlement in this lawsuit (the "Civil Action"). The Settlement was the result of arm's-length negotiations, conducted by experienced counsel for all Parties, after exchanging information and payroll records, and after participating in a day-long mediation with the mediator David White. The terms of the Settlement are reasonable, appropriate, and fair to all Settling Plaintiffs.

After approval, the Settling Plaintiffs will receive a Settlement Payment issued by the Settlement Administrator in exchange for a limited release of the claims they have for or related to unpaid overtime wages under the Fair Labor Standards Act, and any other analogous state or

local laws governing the payment of overtime wages, arising out of work performed for Gateway as Case Managers at any time through May 20, 2021.

For the reasons explained below, the Parties' Settlement is a fair and reasonable resolution of a *bona fide* dispute between the Parties. As a result, Plaintiffs respectfully request the Court approve the Parties' Settlement Agreement (herein "Agreement"), attached hereto as Exhibit 1.

## II.   <u>Facts and Procedural History</u>

Named Plaintiff joined the case *Coltogirone et al. v. Gateway Health, LLC*, Case No. 2:20-cv-605 (W.D. Pa.) as an opt-in plaintiff in July 2020. *See* Exhibit 2, Declaration of Travis M. Hedgpeth, ¶ 9. Following an agreement by the parties to that action to split the litigation into multiple cases, Named Plaintiff withdrew from that case and subsequently filed this collective action on behalf of herself and other similarly situated employees on October 1, 2020, alleging that Gateway violated the FLSA by classifying her and other Case Managers as exempt, paying them a salary and failing to pay them one and one half times their regular rate for all overtime hours worked. *Id.* ¶ 10; Complaint, ¶¶ 9-15, ECF 1. Gateway does not admit any liability, denies any wrongdoing and denies that the Settling Plaintiffs are entitled to any damages. *See* Answer, ECF 3. Gateway asserted affirmative defenses, including statutory exemptions under the FLSA, contending that the Settling Plaintiffs are exempt under the professional exemption, the administrative exemption and/or the combination exemption of the FLSA and are not entitled to overtime wages. Answer, Seventh Affirmative Defense, ECF 23.

After negotiations between counsel, Plaintiffs filed a Stipulation and Motion for Conditional Certification and Court-Authorized Notice on December 22, 2020. ECF 21. On January 4, 2021, the Court granted the Motion and conditionally certified the following group of potential plaintiffs: all individuals who worked for Gateway Health Plan, LP or Gateway Health,

LLC at any time between January 4, 2018 and January 4, 2021 in the job title Case Manager. ECF 22. A third-party administrator, Simpluris, Inc., was retained to send notice to the potential opt-in plaintiffs. Ex. 2, Hedgpeth Decl. ¶ 13. A total of six (6) plaintiffs, including the Named Plaintiff, have filed consent forms to become party plaintiffs. *Id.* ¶ 14.

Following the end of the opt-in period, the Parties agreed to retain mediator David White in an effort to resolve the claims in the case. *Id.* ¶ 22. Prior to the mediation, the Parties engaged in an extensive and detailed investigation and exchange of information regarding the performance of job duties, method of compensation, and hours worked. *Id.* ¶ 23. Gateway produced payroll data in Excel for the Settling Plaintiffs and the Parties calculated damages for the Settling Plaintiffs. *Id.* ¶ 25. On May 20, 2021, the Parties attended the mediation, at which they agreed to the material terms of the settlement. *Id.* ¶ 27.

Following the mediation, the completion and execution of a settlement agreement was delayed, as a dispute arose regarding the payment of fees to administer the settlement and the choice of settlement administrator. *Id.* ¶ 28. The Parties resolved the dispute. *Id.*

### III.    **Summary of the Settlement Terms**

#### A.    **The Settlement Fund**

Gateway has agreed to pay $54,186.00 to settle the claims in this Action, which shall be used to provide for (i) Settlement Payments to the Settling Plaintiffs; (ii) an Incentive Award to the Named Plaintiff; (iii) the Attorneys' Fees and Expenses Payment to Plaintiffs' Counsel; and (iv) the Costs of Administration to the Settlement Administrator. Ex. 1, Agreement, § 1.12. The Maximum Gross Settlement Amount does not include the employer's share of applicable employment taxes, which will be paid by Gateway outside the Maximum Gross Settlement Amount. Ex. 1, Agreement § 1.12.

3

**B.     Distribution of Settlement Checks**

The Maximum Gross Settlement Amount represents Plaintiffs' calculation of 100% of the federal overtime compensation owed to the Settling Plaintiffs if they worked an additional 9.5 hours than reported on Gateway's payroll records in each week they worked going back three years from the date the lawsuit was filed. Ex. 2, Hedgpeth Decl. ¶ 29.  Section 1.12(d) of the Agreement sets forth the percentage of the Net Settlement Amount each Settling Plaintiff will receive.

The Parties have selected CAC Services Group, LLC to be the Settlement Administrator. Ex. 1, Agreement § 1.8. Should the Court approve the Settlement, the Settlement Administrator will shortly thereafter mail to all Settling Plaintiffs a check representing his or her Settlement Payment along with a notice letter from Plaintiffs' Counsel. Ex. 1, Agreement, § 4.3.

**C.     Calculation of Settlement Payments, Tax Treatment, and Uncashed Settlement Checks**

Each Settling Plaintiff's Settlement Payment has been calculated using the payroll data Gateway produced in the litigation for the period between the date that is three years prior to the date each Settling Plaintiff joined the Action and February 2021. Ex. 2, Hedgpeth Decl. ¶ 30. Because Gateway did not keep track of the hours each Settling Plaintiff worked during each week, Plaintiffs' Counsel calculated each Settling Plaintiff's alleged hours based on the number of regular hours he or she was paid for working in each two week pay period. *Id.* ¶ 31.  Plaintiffs' Counsel distributed regular work hours and any leave time equally between the two work weeks in each pay period. *Id.* ¶ 32.  For settlement distribution purposes, Plaintiffs' Counsel added 9.5 additional hours of work time to each work week, and the sum equals the total hours worked per work week. *Id.* ¶ 33.

Each Settling Plaintiff's Regular Rate for each pay period was calculated by totaling the Settling Plaintiff's earnings for each pay period, allocating half the earnings to work week 1 and

half the earnings to work week 2, and by dividing the weekly earnings by the total number of hours assumed to have been worked in the work week for settlement purposes. *Id.* ¶ 34. If the total hours worked per work week for settlement purposes exceeds 40, the overtime hours in the work week equals the number of hours over 40. *Id*. For each pay period, the Settling Plaintiff's regular rate multiplied by the number of overtime hours and by 0.5 equals the Settling Plaintiff's overtime wages owed in the work week. *Id*. The sum of each Settling Plaintiff's total overtime wages for all work weeks divided by the sum of all Settling Plaintiff's total overtime wages is each Settling Plaintiff's "Ratable Share." *Id.* Each Settling Plaintiff's Settlement Payment shall be calculated by multiplying his or her Ratable Share by the Net Settlement Amount. *Id.*

Each Settling Plaintiff will receive his or her Settlement Payment in one check, with half of the Settlement Payment representing owed wages and the other half of each Settlement Payment representing liquidated damages. *Id.* ¶ 36. Regular employee payroll deductions shall be withheld from the portion of each Settlement Payment that is allocated to wages. Ex. 1, Agreement § 4.3(d). The Settlement Administrator will issue each Settling Plaintiff an IRS Form W-2 for the wage portion of each Settlement Payment and an IRS Form 1099 for the liquidated damages portion of each Settlement Payment. *Id.,* § 4.3(a)(iii). Plaintiffs' Counsel expects that all Settlement Payments will be cashed, but in the event a Settlement Payment check is not negotiated within the 120-day check cashing period, that check will not be returned to Gateway. Ex. 2, Hedgpeth Decl. ¶ 37. Any funds from settlement checks left uncashed will be remitted by the Settlement Administrator to the unclaimed property fund in the state where the Settling Plaintiff last worked for Gateway. Ex. 1, Agreement § 4.3(a)(i).

**D.    All Settling Plaintiffs are Providing a Limited Release**

The Agreement provides the Settling Plaintiffs will provide a limited release to the Released Parties from any and all claims that were asserted or that could have been asserted in the Civil Action related to the payment of overtime wages, including but not limited to all claims, demands, and causes of action for unpaid overtime wages, penalties, liquidated damages, interest, costs, attorneys' fees, and any other relief under the FLSA, 29 U.S.C. § 201, *et seq*., and any other analogous state or local laws governing the payment of overtime wages, arising out of work performed for Gateway as Case Managers at any time through May 20, 2021. Ex. 1, Agreement § 5.1.

### E.    The Agreement Contains No Confidentiality Provision

The Agreement has been filed on the public record, and there is no confidentiality provision. The Parties agreed to a narrow non-publicity provision which provides that the Settling Plaintiffs and their counsel will refrain from issuing or causing to issue any press release, website posting, social media or press outreach communicating any information about the Civil Action or this Agreement. Ex. 1, Agreement § 7.4.[1]

### F.    Incentive Award and Attorneys' Fees and Expense Payment

The Agreement provides the Named Plaintiff is eligible to receive Incentive Awards in the amount of $4,000 for filing the Complaint in her name on behalf of herself and similarly situated persons, submitting to multiple extensive interviews with Plaintiffs' counsel, and assisting with the preparation for the mediation with David White. Ex. 1, Agreement § 1.12(b).

Finally, in addition to the payments to the Named Plaintiff and the other Settling Plaintiffs described above, the Agreement provides Plaintiffs' Counsel shall also request an amount not to

---

[1] Similar language was recently approved in this District in another FLSA settlement. *Hobbs v. System One,* 2:18-cv-00181-CRE (W.D. Pa. October 15, 2019), ECF No. 82 (approving non-publicity provision in FLSA settlement (ECF No. 77-1)).

exceed $21,674.40 from the Maximum Gross Settlement Amount as attorneys' fees and an amount not to exceed $2,846.62 for reimbursable litigation expenses. *Id.,* §1.12(a).

## IV.    The FLSA Settlement is Fair and Reasonable and Should be Approved by the Court

### A.    Standard for Approval of a FLSA Settlement

Courts are divided on whether judicial approval of an FLSA settlement is required. *Horton v. Right Turn Supply, LLC,* No. 2:19-cv-1271-NR, 2020 WL 1952678, at *1 (W.D. Pa. April 23, 2020). The Third Circuit has not yet opined on whether court approval is required, but district courts in the Third Circuit and in this District have routinely considered motions for approval of FLSA settlements. *See Buonopane v. Republic EEs, LLC,* No. 2:19-cv-00296-CRE (W.D. Pa. Feb. 7, 2020) (approving FLSA collective action settlement), ECF No. 46; *Hobbs v. System One Holdings, LLC,* 2:18-cv-181-CRE (W.D. Pa. October 15, 2019), ECF No. 82; *Decker v. U.S. Well Services, LLC,* No. 2:16-cv-755-CRE (W.D. Pa. September 6, 2018), ECF No. 52.

The standard for approval is straightforward. A court should approve an FLSA settlement if it is a fair and reasonable resolution of a *bona fide* dispute between the parties. *Davis v. Essex County,* No. 14-cv-1122 (CCC-JBC), 2015 WL 7761062, at * 2 (D.N.J. December 1, 2015). When analyzing whether the settlement meets the standard for approval, a strong presumption exists in favor of a finding that a settlement is fair. *Gagliastre v. Capt. George's Seafood Restaurant, LP,* No. 2:17-cv-379, 2019 WL 2288441, at *1 (E.D. Va. May 29, 2019); *Lliguichuzhca v. Cinema 60, LLC,* 948 F. Supp. 2d 362, 365 (S.D.N.Y. June 5, 2013). The Parties' Agreement meets the standard for approval.

### B.    The Proposed Settlement is the Product of Contested Litigation

The settlement is a result of contested litigation and was reached only after over a year of investigation and litigation, described in Section II, *supra*. Further, the settlement was reached only after the parties attended a day-long mediation with a neutral third-party mediator.

### C.    The Proposed Settlement Reflects a Fair and Reasonable Resolution of a *Bona Fide* Dispute Between the Parties

A bona fide dispute exists when "there is some doubt as to whether the plaintiff would succeed on the merits at trial." *Waltz v. Aveda Transportation and Energy Services, Inc.,* No. 4:16-cv-469, 2017 WL 2907217, at *2 (M.D. Pa. July 7, 2017), citing *Bettger v. Crossmark, Inc.,* No. 13-cv-2030, 2015 WL 279754 at *4 (M.D. Pa. Jan. 22, 2015) (finding a bona fide dispute existed regarding whether the plaintiffs were misclassified as exempt, whether any violation was willful, and the exact number of hours the plaintiffs worked). Gateway contested the FLSA overtime claims asserted by the Named Plaintiff and the other Settling Plaintiffs on multiple fronts. Gateway denied that the overtime requirements of the FLSA were applicable to the Named Plaintiff and similarly situated employees, disputed the number of hours that the Named Plaintiff and the other Settling Plaintiffs alleged to have worked, and denied that the Named Plaintiff and the Settling Plaintiffs were owed overtime wages under the FLSA. *See generally*, Answer,  ECF No. 3. The Parties also disputed whether liquidated damages were appropriate, whether if overtime violations occurred, they were willful violations that triggered the three-year statute of limitations period, and whether this action could proceed to trial on a collective action basis. *Id.*

This procedural posture, where Gateway denied that it violated the FLSA by classifying Case Managers as exempt and where settlement was reached only after private mediation, supports the finding that a bona-fide dispute exists between the Parties. Thus, the Court should find that the Settlement Agreement is the product of a bona fide and contested dispute between the Parties. *See Carney v. Travelers Aid Society of Philadelphia,* No. 19-3599, 2020 WL 703684, at *3 (E.D. Pa.

Feb. 11, 2020) (a bona fide dispute existed where the defendant disagreed that the plaintiff was misclassified as exempt under the FLSA and disputed the amount of additional hours the plaintiff worked); *Kapolka v. Anchor Drilling Fluids USA, LLC,* No. 2:18-cv-1007-NR, 2019 WL 5394751, at *2 (W.D. Pa. Oct. 22, 2019) (finding a bona fide dispute existed when the defendant's answer demonstrated a rejection of the plaintiff's key allegations.)

### D.  The Proposed Settlement is Fair and Reasonable

When examining whether to approve a FLSA settlement as reasonable, courts sometimes look at the factors used to analyze the fairness of Rule 23 settlements as set forth in *Girsh v. Jepson,* 521 F.2d 153, 157 (3d Cir. 1975). While these factors may provide a helpful framework, a "rigid application of those factors is neither required nor appropriate in the FLSA context." *Kapolka,* 2019 WL 5394751, at *3. The Rule 23 factors include: (1) complexity, expense, and likely duration of litigation; (2) the reaction of the class to the settlement; (3) the stage of proceedings and amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risk of maintaining the class through trial, (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of the attendant risks of litigation. The review of these factors supports a finding that the Settlement is fair.

If the litigation had continued, it would have been complex, expensive, and protracted. The Settling Plaintiffs, who worked in the position of Case Manager, were classified as exempt and they worked remotely away from Gateway's place of business. Plaintiffs faced challenges in defeating the professional, administrative, and combination exemption defenses Gateway raised and in proving the number of hours the Settling Plaintiffs worked in the absence of time records.

Ex. 2, Hedgpeth Decl. ¶ 20.  The Parties would have been required to engage in costly electronic discovery bearing on the job duties the Settling Plaintiffs performed, the level of supervision they were subjected to, and the hours they worked. *Id.* ¶ 21. The Parties would have incurred substantial expense conducting depositions.  The Settling Plaintiffs also faced risks on liability. The parties likely would have spent significant resources briefing contested issues on the application of Gateway's exemption defenses. Instead of expensive, complicated, and protracted litigation, this Settlement provides significant monetary relief to the Settling Plaintiffs now. The Named Plaintiff supports this Settlement. *Id.* ¶ 38.

This collective action was resolved only after Gateway produced comprehensive payroll data for all Settling Plaintiffs. *Id.* ¶ 25. In addition, at the time the Civil Action was resolved, the Settling Plaintiffs provided information to Plaintiffs' Counsel. *Id.* ¶ 26. The stage of litigation had advanced so that Plaintiffs' Counsel could fairly and fully evaluate the value of the settlement. *Id.* ¶ 23.  As a result, the Parties had all the information that they needed to evaluate the strength of their claims. This factor supports granting approval of the Settlement.

Further, the Maximum Gross Settlement Amount provides the Named Plaintiff and the other Settling Plaintiffs with substantial recovery—100% of their alleged overtime wages owed, assuming they worked an additional 9.5 hours than reported on Gateway's payroll records during each and every workweek in the three years prior to the filing of the Complaint. Inasmuch as Gateway denied that the Named Plaintiff and the Settling Plaintiffs were entitled to overtime at all, and the Parties disputed the number of hours worked by the Named Plaintiff and the other Settling Plaintiffs each week, this is an excellent result.

Likewise, the benefit that Settling Plaintiffs will immediately receive is a significant factor weighing in favor of the Court's approval of the proposed Settlement. The Agreement removes

the risk of further litigation, including decertification of the FLSA collective and the possibility of losing at summary judgment or trial. These factors, in conjunction with the Named Plaintiff's and Plaintiffs' Counsel's support of the Settlement, weigh heavily in favor of a finding that the Settlement Agreement is a fair and reasonable compromise.

## V.    The Incentive Awards are Reasonable and Should be Approved

The Settlement Agreement contemplates providing an Incentive Award to the Named Plaintiff in the amount of $4,000 to acknowledge the time and effort she expended in helping to achieve a successful Settlement. This payment is in addition to any payment she receives as her *pro rata* share of the Net Settlement Amount.

Courts allow separate awards to be paid to named plaintiffs who initiate FLSA collective actions in recognition of the risks taken, time expended and benefits to the class. See *Kapolka, v.* 2019 WL 5394751, at *13 citing *Bredbenner v. Liberty Travel, Inc.,* No. 09-1248-MF, 2011 WL 1344745, at *23 (D.N.J April 8, 2011). Incentive awards are well suited in employment litigation because the named plaintiff assumes the risk that future employers may look unfavorably upon him or her if they file suit against former employers. *Beesley v. Int'l Paper Co.*, No. 06 C 703, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014).   Additionally, the Named Plaintiff assumed significant risk that "should the suit fail, [she could] find [herself] liable for the defendant's costs or even, if the suit [was] held to have been frivolous, for the defendant's attorneys' fees." *Espenscheid v. DirectSat USA, LLC,* 688 F.3d at 872, 876-77 (7th Cir. 2012) (internal citations omitted). Courts also approve incentive awards to named plaintiffs to reward them for "'contributing to the enforcement of mandatory laws.'" *Kapolka,* 2019 WL 5394751, at *13, citing *Devlin v. Ferrandino & Son, Inc.,* No. 15-4976, 2016 WL 7178338, at *11 (E.D. Pa. December 9, 2016).

The role of the Named Plaintiff in this litigation was crucial. She initiated the filing of the lawsuit, conferred and corresponded with Plaintiff's Counsel, and assisted in the preparation of the day-long mediation session. Ex. 2, Hedgpeth Decl. ¶ 39. Her efforts strengthened the Settling Plaintiffs' position and aided in achieving an excellent result. *Id*.

The Incentive Award requested comports with service payments recently awarded to named plaintiffs in other FLSA actions. *See Decker v. US Well Services, LLC,* No. 2:16-cv-755-CRE, (W.D. Pa. September 6, 2018), ECF No. 52 (approving $225,000 wage and hour settlement (ECF No. 49-1) and awarding $12,000 in enhancement awards to the 2 named plaintiffs); See *Kapolka,* 2019 WL 5394751, at *13 (citing six cases approving incentive payments ranging from $2,500 to $12,500).

Accordingly, the Incentive Award is reasonable, and this Court should approve it.

## VI. **The Attorneys' Fees and Expense Payment is Reasonable**

### A. **Award of Attorneys' Fees**

Courts in this district also separately assess the reasonableness of Plaintiffs' attorneys' fees. In the Third Circuit, a Court may evaluate the award of attorneys' fees through two established methods: (1) the lodestar approach and (2) the percentage of the recovery approach. *In re AT& T Corp. Sec. Litig.,* 455 F.3d 160, 164 (3d Cir. 2006). Under the common fund doctrine, "a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *In re Cendant Corp. Sec. Litig.,* 404 F.3d 173, 187 (3d Cir. 2005) (citation omitted). When calculating attorneys' fees in such cases, the percentage-of-recovery method is generally favored. *In re Diet Drugs,* 582 F.3d at 540 (citing *In re Prudential Ins. Co.,* 148 F.3d 283, 333 (3d Cir. 1998)). In determining what constitutes a reasonable percentage fee

award in this Circuit, district courts examine the following factors: (1) the size of the fund created and the number of beneficiaries; (2) the presence or absence of substantial objections by plaintiff(s) to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorney involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by counsel; and (7) the awards in similar cases. *Gunter v. Ridgewood Energy Corp.,* 223 F.3d 190, 195 n.1 (3d Cir. 2000).

These factors support approval of the requested fee and are discussed below.

**1. The size and value of the fund support approval of the requested fee**

The benefit that Settling Plaintiffs will receive is significant. The entire $54,186 that will be deposited into the Settlement Account will be distributed to the Settling Plaintiffs, Plaintiffs' Counsel and the Settlement Administrator. All Settling Plaintiffs will receive a check via U.S. Mail, representing their *pro rata* share of the Net Settlement Amount without the need to submit a claim form.

In addition, the payments Settling Plaintiffs will receive represent an additional 9.5 hours added to the time they worked every single week over the past three years. This is an exceptional result by any measure inasmuch as Gateway denies that any of its policies and practices violated the FLSA or that the Settling Plaintiffs regularly worked overtime. This results in an average settlement payment of nearly $5,000 *after* attorneys' fees and costs. Ex. 2, Hedgpeth Decl. ¶ 35.

Further, no Settling Plaintiff is providing a general release. The Settling Plaintiffs will provide the Released Parties with a limited release of their overtime wage claims only. *See Ramah Navajo Chapter v. Babbitt,* 50 F. Supp. 2d 1091, 1103-04 (D.N.M. 1999) (noting that the limited, rather than general, nature of the release as further evidence of an exceptional result in favor of class members).

### 2.    The absence of objections supports approval of the requested fee

At the outset of the litigation, the Named Plaintiff entered into a professional services agreement that entitled Plaintiffs' Counsel to a 40% interest in the gross amount recovered. Ex. 2, Hedgpeth Decl. ¶ 43. Plaintiffs' Counsel's fee is consistent with the terms of the representation agreement, and the Named Plaintiff does not object to the request. Ex. 2, Hedgpeth Decl. ¶ 43.

### 3.    The skill and efficiency of Plaintiffs' Counsel supports the requested fee

Travis M. Hedgpeth of The Hedgpeth Law Firm, PC is a highly experienced wage and hour litigator. Mr. Hedgpeth has extensive experience representing care management employees in misclassification cases and is a contributing author for the next edition of the wage and hour treatise *Wage and Hour Laws: A State-by-State Survey*, published by Bloomberg BNA in conjunction with the American Bar Association Section of Labor and Employment Law. Ex. 2, Hedgpeth Decl. ¶ 7. Misclassification cases involving care management employees are typically more complex than most wage and hour cases, as they often require a comprehensive understanding of federal and state laws relating to Medicaid and/or Medicare administration, as well as licensure requirements for nurses and other clinicians. *Id.* ¶ 8. Mr. Hedgpeth's experience has provided his firm with expertise in the legal, factual, and administration issues that characterize these types of actions. *Id.* Plaintiffs' Counsel obtained a favorable result in an efficient manner, but had this case not resolved, Plaintiffs' Counsel would have been prepared to litigate this matter through trial. *Id.* ¶ 44.

Plaintiffs' Counsel have the skill and experience necessary to perform the significant discovery needed to pursue the collective action and to oppose the motion for summary judgment and motion for decertification that Gateway would have likely filed.

### 4.    The complexity and duration of the litigation supports the requested fee

The Settling Plaintiffs faced challenges in defeating the professional, administrative, and combination exemption defenses Gateway raised, proving the overtime violations were willful, and in proving the number of hours they worked in the absence of time records. Moreover, the fact that this case involves managed care employees implicates state and federal regulations and licensure requirements that bear on the employees' status as exempt professionals.

**5.    The risk of non-payment supports the requested fee**

The Attorneys' Fees award is reasonable considering the significant risks of nonpayment Plaintiffs' Counsel faced. Counsel took this case on a contingent fee basis and assumed the risk they would receive *no* fee for their services. Ex. 2, Hedgpeth Decl. ¶ 44.  Here, Counsel faced significant risk in establishing that collective treatment was appropriate for trial and that the Settling Plaintiffs were misclassified as exempt. Plaintiffs' Counsel "could have lost everything" they invested. *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992). These facts support Plaintiffs' Counsel's fee request.

**6.    The amount of time devoted to the case by Plaintiffs' Counsel supports the requested fee**

During the course of the litigation, Plaintiffs' Counsel investigated the claims, prepared the pleadings, negotiated the issuance of notice to members of the collective, obtained information from and communicated with the Settling Plaintiffs, reviewed payroll data and computed damages for the Settling Plaintiffs, prepared a mediation statement, attended a day-long mediation session, and continued to negotiate the settlement following the mediation. Travis M. Hedgpeth expended 28.5 hours on this litigation. Ex. 2, Hedgpeth Decl. ¶ 40. At a rate of $600 per hour, this results in a lodestar of $17,100. *Id.* ¶ 41. That is, the lodestar is nearly the entire amount of attorneys' fees requested without even accounting for the time the attorneys at Siegel Law Group, PLLC and Goodrich & Geist, PC (who acted as local counsel) spent working on the case. Further, the lodestar

does not take into consideration the time Plaintiffs' Counsel will spend seeking approval of the Settlement, and if approved, fulfilling their obligations under the Agreement, conferring with the Settlement Administrator, and monitoring the administration of the settlement. Ex. 2, Hedgpeth Decl. ¶ 40.

### 7.   Awards in similar cases supports the requested fee

Plaintiffs' Counsel's request for 40% of the Maximum Gross Settlement Amount is consistent with the percentage of the fund awarded in similar FLSA cases. It is common for district courts in the Third Circuit to approve fees awards that range from 20% to 45% in FLSA common fund cases. *Mabry v. Hildebrandt,* No. 14-5525, 2015 WL 5025810, at *4 (E.D. Pa. Aug. 24, 2015) (citing cases and approving counsel's request for 40% of the recovery).

Plaintiffs' Counsel's request for $21,674.40 of the Maximum Gross Settlement Amount is also consistent with fees that have been awarded by this Court in comparable wage and hour litigation. *See Hobbs v. System One,* 2:18-cv-00181-CRE (W.D. Pa. October 15, 2019), ECF No. 82 (approving 40% in attorneys' fees award in FLSA settlement (ECF No. 77-1)); *Decker v. US Well Services, LLC,* No. 2:16-cv-755-CRE (W.D. Pa. September 6, 2018), ECF No. 52 (approving 41.5% in attorneys' fees and costs award in FLSA settlement (ECF No. 49-1)).

Based upon the negotiated fee agreement in this case, the normal rate of compensation in similar cases, the risk Plaintiffs' Counsel undertook in engaging in this litigation, and the excellent result achieved for Settling Plaintiffs, Plaintiffs' Counsel's request for 40% of the Maximum Gross Settlement Amount is reasonable.

### B.   Litigation Expenses

The Agreement provides that Plaintiffs' Counsel may apply to the Court for payment of litigation expenses up to $2,846.62. Plaintiffs' Counsel seek reimbursement of $2,846.62, which

is the amount of litigation expenses Plaintiffs' Counsel has incurred in this matter through November 9, 2021. Ex. 2, Hedgpeth Decl. ¶ 45. Plaintiffs' Counsel incurred $400.00 in filing fees, $82.50 in *pro hac vice* admission-related costs, $1,766.20 in fees to the third party administrator to distribute notice to the collective, and $597.92 in mediation fees. *Id.* Plaintiffs' Counsel's request to be paid $2,846.62 from the Maximum Gross Settlement Amount as payment of expenses is appropriate, as these expenses were necessarily incurred in order to litigate and settle this case. *Id.* ¶ 46.

## VII.    <u>Dismissal of Lawsuit with Prejudice</u>

In addition to approving the Agreement, the Plaintiffs request that the Court dismiss this lawsuit with prejudice pursuant to Federal Rules of Civil Procedure 41(a)(2) as contemplated by Section 1.9 of the Agreement. Plaintiffs also request that the Court retain jurisdiction to interpret, implement and enforce the terms of the Agreement as contemplated by Section 7.1 of the Agreement.

## VIII.    <u>Conclusion</u>

The Settlement Agreement is a fair and reasonable compromise of a bona fide wage-and-hour dispute between the Parties. The Parties therefore respectfully request that the Court approve the Agreement and enter the Proposed Order.

Dated:  November 10, 2021                    Respectfully submitted,

By: */s/ Travis M. Hedgpeth*

Travis M. Hedgpeth – travis@hedgepethlaw.com
(admitted *pro hac vice*)
**The Hedgpeth Law Firm, PC**
3050 Post Oak Blvd., Suite 510
Houston, Texas 77056
Tel: 281-572-0727

17

Joshua P. Geist - josh@goodrichandgeist.com
PA. I.D. No. 85745
**Goodrich & Geist, P.C.**
3634 California Ave.
Pittsburgh, PA 15212
Tel: 412-766-1455

Jack Siegel – jack@sigellawgroup.biz
(admitted *pro hac vice*)
**Siegel Law Group PLLC**
5706 E. Mockingbird Lane, Suite 115
Dallas, Texas 75206
Tel: 214-790-4454

**ATTORNEYS FOR PLAINTIFFS**